THE GREENWOOD LAKE AND PORT JERVIS RAILROAD COM-
PANY, Appellant, *v.* THE NEW YORK AND GREENWOOD
LAKE RAILROAD COMPANY, Respondent.

*Supreme Court, Second Department, General Term, December 9,* 1889.

1. *Easement. Creation.*—The right, in writing, to pass and repass ice-
cars from an ice-house, through the grantor's land, to the grantee's
railroad, though not exclusive and not assignable to any one but its
successors, is a grant of a right of way and not a mere license.
2. *Same.*—The right of way, where the grant includes a strip seventy-five
feet wide, is not restricted to the road as built, unless the grant so con-
fines it ; and the absolute right given carries with it the right to make
a cut within the strip to improve the grades and curves.
3. *Railroad. Limitation.*—A railroad company ceases to exist, under the
general act, after five years, unless within such time it has commenced
its road ; and, in such case, it cannot take or convey title.

Appeal from judgment dismissing complaint.

Action for trespasses on real estate near Greenwood Lake
in Orange county. The complaint alleged two trespasses,
one in using the real estate and the other in changing the
track thereon.

In March, 1887, James W. Weston and Mary E. Burt con-
veyed a strip of land seventy-five feet wide to one Myers,
named as trustee, to be used only for railroad purposes and
on condition that the railroad should be built and trains run
thereon within six months, which was done. Myers con-
veyed to one Thorpe and he to one Traphagen, who in May,
1886, conveyed to one McDowell an undivided half of the
farm and this seventy-five foot strip. McDowell conveyed
to the New England, N. Y. & Pa. R. R. Co., which conveyed
to plaintiff. Said railroad company was organized in 1878,
but up to 1885 had done nothing towards commencing the
construction of its road.

In 1877 Traphagen executed and delivered to the Greenwood Lake Ice Company, in consideration of one dollar, an instrument in writing as follows :

" I do hereby grant to the said ice company and to their assigns and successors in said ice business, the right to use said property for the purpose of a way of ingress, egress and regress over and upon which they may pass and repass railroad cars containing ice and materials, said supplies for use in said ice business, together with themselves, their employees and servants, but it is expressly understood that this license to use said railroad is not an exclusive right to the said company.

" And it is further agreed that the right hereby conveyed is not to be assigned by the said company except to the successors in, and assigns of said ice business, and only for the purpose of said business."

The ice company thereafter conveyed its premises, together with its rights in this strip, to Edward Cooper and Abraham S. Hewitt, who have since continued the business.

Myers and Thorpe were trustees for the president of the Montclair & Greenwood Lake Railroad Company, which was afterwards reorganized, and defendant is its successor. In 1887 a change was made by defendant, with the consent of Cooper and Hewitt, in the location of the railroad track and a cut made for the purpose of increasing the availability of the road for the ice business. These are the acts complained of, and also that the tracks were used to store defendant's passenger cars, plaintiff claiming that the deed from Traphagen was a mere license, revocable at the pleasure of the owner of the land.

The court at special term dismissed the complaint and delivered the following opinion :

BARNARD, J.—The paper proven on the trial accompanying the site of the ice-house property evidenced a grant of a right of way, and not a mere license. The paper states that it

grants a right of way. The only limitation is that it is inci-
dent to the ice-house property, and cannot be sold except to the
successor in the ice business, and it is not an exclusive right
to the land over which the way is constructed. The sur-
rounding circumstances favor this construction : A valu-
able property is sold, surrounded by lands of the grantor,
which was already established as an ice business by the erec-
tion of large ice-houses thereon. The ice was designed for a
foreign market, and this was a piece of railroad leading from
defendant's road to the ice-houses then made. The railroad
follows within a strip of seventy-five feet wide, which was
in the future to be a railroad. The right of way proper did
not, in terms, restrict the right to this strip, but that that
was the design of the parties is the best inference. This is
especially the inference as the deeds, or some of them, are
subject to the right of way, as the right of way is sub-
ject to the real owner, except so far as the right of way
is permanent.

The right of way is not restricted to the road as now built.
The paper does not say so, and the absolute right given car-
ries with it the right to make the way useful for railroad
cars. Cooper and Hewitt had, under it, a right to make a
good grade and good curves, so that the ice could be drawn
out over the right of way in cars. The cut was, therefore,
properly made for this purpose ; and, assuming the plaintiff's
right as owner of the seventy-five foot strip, no action will
lie for this cut inside of the strip. The right of way was
never designed to be attached to the main track of the to be
built railroad. The ice-house had its right of track, and the
prospective railroad company had all that was left within
the strip.

After the new way was made it left a piece of road on the
strip which belonged to the owner of the strip, and the
defendant has used this piece to land passengers at a pavilion
erected by the owner of the land outside. If the plaintiff
owns this strip it is entitled to recover for the use of this

piece of railroad. The plaintiff derives title to the strip through a railroad company which was never really organized, and never authorized to commence the construction of a railroad under it. When the title to the strip was conveyed to it by McDowell it was some ten years after its proper organization, and by our general railroad act it ceased to exist after five years unless a beginning was made within that period. This company could not therefore take a title and on conveyance could convey none. The original grant was for railroad purposes and limited that time as a condition of the grant that the road should be built within ten years, and it is doubtful whether the grantees under the grant, who had never taken possession and had never even attempted to commence the construction of the road, had any title to give to this defunct corporation. If there is any claim for the use of this piece of railroad extending beyond the pavilion it is in Van Vleck, and he consented to the use of it and it was used for his benefit.

The complaint should therefore be dismissed, with costs.

*Charles S. Noyes,* for appellant.

*Lewis E. Carr,* for respondent.

DYKMAN, J.—The judgment from which the appeal in this action is taken should be affirmed on the opinion of the trial judge printed in the case.

PRATT, J., concurs.

CULLEN, J. (dissenting).—This action is for a series of trespasses committed on a strip of land seventy-five feet wide on which a railroad has been constructed. The plaintiff claims title to the premises and sues not only for trespasses committed during its own ownership, but for those committed during the ownership of its grantors, which claims it holds by assignment from such prior owners. The cause

was tried by the court without a jury, and judgment rendered for the defendant. We think this judgment cannot be sustained. The complaint alleged title in the premises in one William C. Traphagen from December 28, 1877, to June 31 (?), 1886. The answer expressly admits that at one time Traphagen was the owner of the premises. This admission does not cover the period mentioned in the complaint. But as the answer contains no denial of the allegation of the complaint in this respect, the fact was admitted. The claim made on the trial that the Montclair Railroad Company had an equitable interest in the premises, to which the defendant succeeded, was, therefore, against the admissions of the pleadings. The findings of the trial court of these facts were without evidence to sustain them, and were in direct hostility to such admissions. The findings were, therefore, erroneous. This disposes of all claim of right or title on the defendant's part as successor of the Montclair Company.

Traphagen conveyed the premises to one McDowell on May 31, 1886. On September 10, 1886, McDowell conveyed to the New England, New York & Pennsylvania Railroad Company. On May 31, 1888, the latter company conveyed to the plaintiff. Both these companies are railroad corporations, organized under the laws of this state. This chain of title, complete on its face, is assailed on the ground that the New England, New York & Pennsylvania Railroad Company was not a corporation at the time of the conveyance to it; first, because the ten per cent. required by a statute had not been paid in in cash at the time of the organization; second, because it did not within five years from its organization commence the construction of its road. These facts were found by the trial court, and the evidence justified the findings. We think that this defense was not available by the defendants. The corporation was a corporation *de facto*. A conveyance to it could not be questioned by the grantor, for he would be estopped from denying the corporate existence

of his grantee, nor could a conveyance from it be questioned save by the state.    Morawetz on Corporations, §§ 753, 754. A *de facto* corporation is all that is requisite as against a trespasser.    Remington Paper Co. *v.* O'Dougherty, 65 N. Y. 570.

If, however, we are in error in deciding the conveyance to and that from the New England, etc., Company to be valid, it would not help the defendant.    If the deed to that company was utterly void, the title would not be in air, it would remain in McDowell, the grantor.    The plaintiff sues on four causes of action, to wit, the trespasses committed during its own ownership, and the ownership of its three predecessors in title.    If no title passed to the New England, etc., Company, McDowell's assignment transferred to plaintiff the right to all damages committed up to the date of the assignment.    The defendant's counsel asserts that " a right of action for trespass on real estate may not be severed from the title or right to possession."    We know of no authority or principle to justify such a claim ; on the contrary, we assume it to be elementary law that the reverse of the proposition is correct.    A conveyance of land would not pass to the grantee any claim for prior trespasses.

Nor is the point that the several deeds through which plaintiff's title is deduced are void because of an adverse possession by defendant well founded, even if such question be deemed material.    The evidence shows that the defendant did not claim to own the premises in controversy.    Its claim was not in hostility to the true title, but in subordination to it, as licensees under a license, the effect of which is now to be considered.

In 1878, Traphagen, then the owner of the premises, by an instrument under seal granted to the Greenwood Ice Company " the right to use said property for the purpose of a way of ingress, egress and regress, over and upon which they may pass and repass railroad cars containing ice and materials, said supplies for use in the ice business, together with them-

selves, their employees and servants, but it is expressly understood that this license to use said railroad is not an exclusive right to the said company. And it is further agreed that the right hereby conveyed is not to be assigned by the said company, except to the successors in and assignees of said ice business, and only for the purpose of said ice business."

Cooper and Hewitt subsequently acquired the property and business of the ice company and received a conveyance of its rights under this grant, and the defendant justifies its acts under the license of Cooper and Hewit. Assuming, without deciding, that the rights acquired by the ice company were of such a character that they could be conveyed or assigned, it is clear that the acts of the defendant went far beyond the terms of the grant. So, indeed, the learned trial judge finds, in his opinion, that the defendant used the premises to land passengers at a pavilion. The plaintiff was denied relief for this trespass, on the ground that the plaintiff's immediate grantor was not a valid corporation. This ground we have already held untenable. But we think the trespasses went further. In September, 1887, it tore up a railroad track laid and constructed upon the strip before the grant by Traphagen and constructed a new track, partly on the strip and partly without. We can find no justification for this in the grant. That grant was to use the strip as a way of ingress, egress and regress for railroad cars. No authority to construct or build a railroad upon the strip was granted. There was a railroad on the strip at the time, and doubtless the right to use this track was intended. The trial court justified this act on the ground that the grantees had the right to use the whole width of the strip for a railroad. This we think erroneous, but if true that the grantees could construct other roads, they had no right or power to destroy or impair the railroad already existing.

The judgment should be reversed and a new trial granted, costs to abide event.

Judgment affirmed.